585 P.2d 331

**Julia T. WHITE, Plaintiff-Appellee,**

v.

**John W. SUTHERLAND, Defendant,**

and

**Health and Social Services Department of the State of New Mexico, Intervenor-Appellant.**

No. 3378.

Court of Appeals of New Mexico.

Aug. 1, 1978.

Rehearing denied Aug. 11, 1978.

Writ of Certiorari Denied Sept. 5, 1978.

Toney Anaya, Atty. Gen., Santa Fe, Muriel McClelland, Asst. Atty. Gen., Albuquerque, Carolyn Cosner, Asst. Atty. Gen., Santa Fe, for defendant.

Matteucci & Matteucci, Willard F. Kitts and Elizabeth E. Whitefield, Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Plaintiff sought damages from defendant chiropractor, alleging malpractice. H.S.S.D. (Health and Social Services Department of the State of New Mexico) paid

various medical bills of plaintiff and intervened in the damage suit. H.S.S.D. sought to recover the amount of medical assistance payments made. The damage suit was settled. This appeal is concerned with the division of the settlement money between plaintiff and H.S.S.D. We discuss: (1) § 13–1–20.1, N.M.S.A. 1953 (Repl. Vol. 3, pt. 1); (2) N.M.Const. art. IV, § 32; and (3) equitable division of the settlement money.

*Section 13–1–20.1, supra*

One hundred thousand dollars was paid in settlement. The settlement involved both plaintiff's damage claims and H.S.S.D.'s medical payments.

Plaintiff's injuries were serious and permanent. Her damage claim was for $2,000,000. The testimony of defendant's attorney, introduced by stipulation, was that this damage claim was " 'not out of line' ". The testimony of defendant's attorney, and the representations made by plaintiff's attorney, as an officer of the court, agree that there was a fifty percent chance that defendant would be held liable to plaintiff and if found liable "a verdict of $1,000,000 or more was likely". The settlement for $100,000 was for the amount of the insurance coverage. According to plaintiff's attorney, the $100,000 amount was accepted because of two factors: (1) the fifty percent chance that defendant would be found liable and (2) information that most of defendant's assets were in Mexico, making it unlikely that a judgment in excess of the insurance coverage would be collectable.

H.S.S.D. introduced no evidence to the contrary. Its position was that the information in the preceding paragraph had no legal significance in connection with its repayment claim. It asserted the only significant fact was that it made medical assistance payments and it was entitled to one hundred percent repayment. The amount of the H.S.S.D.'s payments were a few dollars short of $39,000.

The trial court applied equitable concepts and awarded H.S.S.D. less than one hundred percent of its claim. H.S.S.D. appeals.

Section 13–1–20.1, supra, states:

A. The health and social services department shall make reasonable efforts to ascertain any legal liability of third parties who are or may be liable to pay all or part of the medical cost of injury, disease or disability of an applicant or recipient of medical assistance.

B. When the department makes medical assistance payments in behalf of a recipient, the department is subrogated to any right of the recipient against a third party for recovery of medical expenses to the extent that the department has made payment.

This statute pertains to the recovery of medical assistance payments made by H.S.S.D.; the statute pertains to the recovery of such payments from third parties; it pertains to the recovery of such payments from third parties legally liable for the payments made by H.S.S.D. The statute does not pertain to the recovery of payments from the recipient or beneficiary of such payments; in this case, the plaintiff. Compare § 13–1–20, N.M.S.A. 1953 (Repl. Vol. 3, pt. 1).

Defendant was a third party; it is not disputed that defendant was legally liable for the medical payments to the extent of the settlement money paid. See definition of "legal liability" in Black's Law Dictionary (1951). Section 13–1–20.1, supra, is the applicable statute.

H.S.S.D. states that the "intent" of both federal and state law is for states to be reimbursed for medicaid payments from third party sources. H.S.S.D. states: "The legislative intent . . . is expressed in terms that can leave no doubt that states are mandated by Act of Congress to secure reimbursement of medicaid costs."

42 U.S.C.A. 1396a(a)(25) (1974) provides that a state plan for medical assistance must:

(25) provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the

plan) arising out of injury, disease or disability, . . . and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability[.]

The federal statute does show an intent that medical assistance payments be reimbursed; it requires a state to "seek reimbursement" to the extent of the legal liability of a third party. This statute does not, however, show an intent that a state is to receive one hundred percent reimbursement from a legally liable third party, regardless of the facts. As to the *amount* of reimbursement, this statute says nothing.

Similarly, § 13–1–20.1, supra, shows an intent that medical assistance payments be repaid. Similarly, the state statute says nothing as to one hundred percent repayment to H.S.S.D., regardless of the facts.

■ Section 13–1–20.1(B), supra, states that H.S.S.D. "is subrogated to any right of the recipient against a third party for recovery of medical expenses to the extent the department has made payment." H.S.S.D. seems to argue that "to the extent . . . [of] payment" indicates a legislative intent of one hundred percent repayment, regardless of the facts of the case. Such an argument ignores the words "subrogated to any right . . . against a third party for recovery". The statute is to be read to give effect to all of its provisions. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973).

■ Subrogation, historically, is an equitable remedy. *United States Fidelity & G. Co. v. Raton Nat. Gas Co.*, 86 N.M. 160, 521 P.2d 122 (1974). " 'Subrogation' is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense." *United States v. Greene*, 266 F.Supp. 976 (D.C.Ill.1967). In its normal sense, subrogation gives the payor a right to collect what it has paid from the party who caused the damage. *Herrera v.*

*Springer Corporation*, 85 N.M. 6, 508 P.2d 1303 (Ct.App.1973), rev'd on other grounds, 85 N.M. 201, 510 P.2d 1072 (1973). This right to collect, being an equitable remedy, is subject to equitable principles. *United States Fidelity & G. Co. v. Raton Nat. Gas Co.*, supra.

■ Absent a clearly expressed legislative intent requiring otherwise, "subrogated" is to be given its usual, ordinary meaning. *Tafoya v. New Mexico State Police Board*, 81 N.M. 710, 472 P.2d 973 (1970). No such legislative intent being expressed, H.S.S.D.'s "subrogation" in § 13–1–20.1(B), supra, is a right of recovery subject to equitable principles.

Our holding is consistent with federal decisions construing the federal government's independent right, established by statute, to recover medical assistance payments from a liable third party. The applicable statute also provides that the United States is subrogated to any claim of the injured person against the tortfeasor. Because of statutory language, the right of the United States is more than standing in the shoes of the tort-feasor through subrogation, *United States v. Greene*, supra; rather, Congress specified the "equitable remedy of subrogation" in aid of an independent right of recovery. *United States v. Merrigan*, 389 F.2d 21 (3rd Cir. 1968).

Our holding is also consistent with *Hedgebeth v. Medford*, 74 N.J. 360, 378 A.2d 226 (1977). *Hedgebeth* held that when the state exercised its right of subrogation, it was governed by equitable principles and, in seeking reimbursement from a medicaid recipient who had recovered from a third party, the state must pay its pro rata share of recipient's counsel fees.

There is no basis, however, for concluding that the Legislature did not intend by its very careful use of the term "subrogation" to import the equitable incidences of that remedy. As we pointed out, that doctrine is distinctively equitable in nature and is generally understood to mean that a party entitled to the right of subrogation should bear or share reasonable costs which have been incurred in bringing that right to fruition.

■ Neither 42 U.S.C.A. 1396a(a)(25), supra, nor § 13–1–20.1, supra, provide that H.S.S.D. must obtain one hundred percent repayment of medical assistance payments from a legally liable third party. Rather, under § 13–1–20.1, supra, H.S.S.D.'s right of repayment depends on the application of equitable principles. The facts of the case do matter.

*N.M.Const., art. IV, § 32*

H.S.S.D. contends that the application of equitable principles, resulting in less than one hundred percent repayment, would violate N.M.Const., art. IV, § 32 which reads:

No obligation or liability of any person, association or corporation held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed, or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court.

The later portion of the above quotation provides that an obligation or liability owing to the State may be extinguished "by proper proceeding in court." *State v. State Inv. Co., et al.,* 30 N.M. 491, 239 P. 741 (1925). H.S.S.D. does not assert that the trial court's award of less than one hundred percent repayment was not a proper proceeding in court.

■ H.S.S.D. recognizes that the obligation to the State may be extinguished in proper proceedings, but contends that the power to extinguish does not include the power to compromise or reduce the obligation. The claim is frivolous; to the extent the claimed obligation is reduced by the court, the obligation has been extinguished. In *State v. State Inv. Co., et al.,* supra, the settlement of suits for disputed taxes, for amounts less than the amount claimed to be owing, was held not to violate this constitutional provision. See also, *Lyle v. Luna,* 65 N.M. 429, 338 P.2d 1060 (1959).

*Equitable Division of the Settlement Money*

The trial court found:

20. The plaintiff and the Intervenor both participated in the settlement with the defendant for $100,000.00, and this was a compromise settlement in view of the liability factors in the case, the liability insurance limits, and other potential financial resources of the defendant.

■ H.S.S.D. complains of this finding to the extent it states that H.S.S.D. compromised its claim for repayment. It asserts that nothing supports this part of the finding. We agree. Plaintiff and H.S.S.D. jointly moved to dismiss the claim against defendant with prejudice "reserving to the Court only such jurisdiction as necessary to decide between the plaintiff and the intervenor as to the disposition between them of the settlement monies offered herein by the defendant and accepted by the plaintiff and intervenor." In arguing for one hundred percent repayment, H.S.S.D. informed the trial court that "we settled". These items do not support an inference that in settling, H.S.S.D. had compromised its claim because the motion to dismiss made it clear that the division of the settlement money was in dispute. There is nothing else to support a finding that H.S.S.D. compromised the amount of its claim in settling with defendant.

■ Although the "compromise" portion of the finding is not supported by the evidence, this does not aid H.S.S.D. The trial court gave additional reasons for not awarding H.S.S.D. one hundred percent repayment out of the settlement proceeds. If these reasons are correct, the trial court's decision is to be affirmed. *Beall v. Reidy,* 80 N.M. 444, 457 P.2d 376 (1969); *Adoption of Doe,* 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976).

The trial court concluded:

5. The equities in this case require the Court to consider that even if the plaintiff was awarded the full $100,000.00 settlement, that would constitute but a small fraction of her actual damages.

H.S.S.D. says there is nothing to support this conclusion. The claim is frivolous. Findings, fully supported by evidence, are that plaintiff's injury was an infarction of the brain stem which resulted in plaintiff's quadraplegia. This injury totally and permanently disabled plaintiff from pursuing any gainful activity or employment. Plaintiff has partial use of her right arm, no use of any other extremity, and is confined to a wheel chair. Her ability to speak has been greatly impaired. Her physical condition has reached a plateau, little future improvement is anticipated. Plaintiff will need full care by others for the rest of her life. Plaintiff was a registered nurse. For several years prior to her injury, working part-time, her earnings were between $6,000 and $9,000 per year. Her life expectancy at the time of injury was approximately 39 years. These findings fully support the conclusion.

The trial court concluded:

6. The equities in this case require the Court to consider also that any money which the Intervenor may recover in this case has been due, to a very large extent, to the fact that suit was filed by the Plaintiff against the Defendant, and to the energies expended in pursuing the claim by plaintiff's attorneys; the Court must also consider the fact that plaintiff's attorneys are charging a contingent fee of 25% of the recovery.

H.S.S.D. asserts nothing supports this conclusion. Certain findings, going to the preparation of the case, support the conclusion. Evidentiary support for the findings appear in the court file. That file shows the preparation of the case through motions, interrogatories, depositions and the pretrial order. H.S.S.D. did not intervene until *after* the pretrial conference.

The trial court concluded:

9. The equities in this case require that the Intervenor be awarded $10,-000.00 from the settlement proceeds of $100,000.00, and that the balance of the $90,000,00 [sic] shall go to the Plaintiff.

H.S.S.D. challenges this conclusion on the basis that it is contrary to § 13–1–20.1, supra. We have held that H.S.S.D.'s subrogation right under § 13–1–20.1, supra, is subject to equitable principles.

H.S.S.D. asserts that "the equities inure to the one who has paid the bills." To do equity, that is, to accomplish the substantial ends of justice, see *United States Fidelity & G. Co. v. Raton Nat. Gas Co.,* supra, more than the payment of the bills is to be considered. Here, it was proper to consider the extent of plaintiff's injury, the extent to which her damage claim was compromised, the fact that the $100,000 settlement was largely accomplished through the efforts of plaintiff's attorneys, the uncontradicted testimony of defendant's attorney that the medical expenses "were only a very small factor in his evaluation of the case", and the indication in the court file that H.S.S.D. was in effect taking a "free ride" on plaintiff's efforts. Under this record, an award smaller than the $10,000 which H.S.S.D. received would have been justified. However, we do not understand H.S.S.D. to complain of the amount of its award; its basic contention is that equitable considerations could not be applied. We have held to the contrary.

The judgment is affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.