STATE of Indiana and Indiana State Department of Public Welfare, Defendants-Appellants,

v.

Floyd T. COWDELL and Dallas Hughes, Jr., Personal Representative for the Estate of Dallas Hughes, Plaintiff-Appellees.

No. 1–1080A296.

Court of Appeals of Indiana, First District.

June 9, 1981.

Theodore L. Sendak, Atty. Gen., Gary R. Brock, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

Andrew Sulen, Jr., Wright & Daly, Evansville, for plaintiff-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The State of Indiana (State) and Indiana State Department of Public Welfare (Department) appeal the judgment of the Vanderburgh Circuit Court which awarded the State and Department two thousand five hundred dollars ($2500) for reimbursement of thirteen thousand forty-eight dollars and seventy-eight cents ($13,048.78) in medical bills incurred by Floyd T. Cowdell (Cowdell) and paid by the Department. We affirm.

## STATEMENT OF THE FACTS

Floyd T. Cowdell was seriously injured in a fall at a home owned by Dallas Hughes, Sr. As a result of this fall, Cowdell was hospitalized in Evansville, Indiana. The Department, through the Medicaid program, reimbursed the hospital for the thirteen thousand forty-eight dollars and seventy-eight cents ($13,048.78) in medical bills incurred by Cowdell.

On December 13, 1978, Cowdell filed a complaint for personal injuries against Dallas Hughes, Jr. (Hughes), personal representative for the estate of Dallas Hughes, Sr. The parties to the suit engaged in discovery and prepared for trial during a period of one year. On December 27, 1979, Cowdell and Hughes agreed to settle any and all claims arising out of plaintiff's fall for the sum of twenty-five thousand dollars ($25,000). Because the Department had paid Cowdell's medical bills, Cowdell filed a motion to join the State and Department as third party defendants, which was granted. On May 23, 1980, a hearing was held before the trial court to determine what portion of the settlement proceeds should be used to reimburse the State and Department. On June 3, 1980, the trial court entered judgment as follows:

"Comes now the plaintiff in person and by counsel, Gerald G. Fuchs, and the defendant, Dallas Hughes, Jr., by counsel, Andrew Sullen and the State of Indiana, Indiana State Department of Public Welfare Medicaid Division, by Gary R. Brock, Deputy Attorney General of Indiana and the plaintiff's Motion to Join Third Party Defendant and for how much, if any, that the Indiana State Department of Public Welfare should recover out of the proceeds of this case for medicaid payments made under Title XIX of the Social Security Act which established the Medicaid program comes on for trial, finding, and judgment.

\*　　\*　　\*　　\*　　\*　　\*

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. That the plaintiff and the defendant, Dallas Hughes, Jr., reached a good faith compromise in this cause for the sum of $25,000.00.

2. That the defendant, Medicaid Program, has paid for and on behalf of the plaintiff the sum of $13,048.78 in medical bills.

3. That the plaintiff's chances of recovery in this cause upon a trial would be 'small', consisting of less than a 50–50 chance of obtaining a verdict.

4. Plaintiff was seriously and permanently injured in the accident involved in this cause of action to the extent that he is totally, permanently disabled.

5. That the plaintiff and plaintiff's counsel efficiently and vigorously prosecuted this cause of action and, if they had not, no monies would have been forthcoming, except for said vigorous prosecution.

6. That the parties stipulated that the Court has jurisdiction over these issues and has the right to determine what, if any, amount the defendant, State of Indiana, Indiana State Department [of] Public Welfare, should be reimbursed out of the monies paid to the plaintiff.

7. That this issue should be decided upon equitable principles; that the equities in this case [are] that the defendant, State of Indiana, Indiana State Department of Public Welfare, be awarded the sum of $2,500.00 from the settlement proceeds of $25,000.00 and that the balance of the $25,000.00 should go to the plaintiff."

## ISSUES

State and Department raise the following issues for our consideration:

1. Whether the trial court erred in ruling that Cowdell and the defendants had compromised the cause of action for the sum of twenty-five thousand dollars ($25,-000.00) when the State never entered into a compromise and settlement of the cause pursuant to Ind.Code 4–6–2–11.

2. Whether the trial court's failure to reimburse the State for the full amount of Medicaid funds expended by the Department violates 42 U.S.C. § 1396a(a)(25), 42 C.F.R. § 433.135, and 470 Ind.Admin. Code 5–1–11 (1979).

3. Whether the amount awarded to State as reimbursement for Medicaid funds disbursed constitutes an abuse of discretion by the trial court.

## DECISION

*Issue One*

State contends the trial court ruled in its judgment that all of the parties compromised said cause in holding that "the plaintiff and defendants compromised said cause . . ." (Record at 182.) This ruling, State

argues, is erroneous because the Governor and Attorney General never approved a compromise pursuant to Ind.Code 4–6–2–11. The State's contention is without merit. The language in the record which State has quoted is *not* contained in the trial court's judgment. That language is from the minutes of proceedings before the trial court. The trial court's judgment specifically states that *Cowdell and Hughes* reached a good faith compromise, not that the State reached a compromise.

*Issue Two*

■ The Medicaid program is a joint program between the federal government and the state government. The state government under 42 U.S.C. § 1396a(a)(25) and 42 C.F.R. 433.135 is required to ascertain the amount of legal liability of third parties for care and services rendered to Medicaid recipients and treat such liability as a resource of the individual on whose behalf the care and services are made available. Pursuant to this congressional mandate, the Department promulgated a regulation which entitles it to seek subrogation against third parties for Medicaid benefits which it has paid. 470 Ind.Admin. Code 5–1–11 (1979) states:

"The Indiana State Department of Public Welfare shall be subrogated to all claims by Medicaid recipients against Third Parties to the extent of Medicaid benefits received by the recipient, when the direct or proximate cause of the necessity to pay such benefits is the negligence or other legal liability of such Third Parties."

State contends the only limitation imposed by the regulation upon recoveries is that the direct or proximate cause of the necessity to pay the Medicaid benefits is the negligence or other legal liability of third parties. Therefore, State reasons, it is entitled to full reimbursement, which the trial court did not grant.[1]

---

1. Each party to this appeal has alleged that the other party lacks standing. Hughes argues the State lacks standing to challenge the settlement between Cowdell and himself. Since State is not challenging that settlement, but is challenging the amount the trial court awarded it as a reimbursement, we dismiss Hughes' argument.

State contends Hughes does not possess standing to challenge State's appeal and cites us to *City of Indianapolis v. Indiana State*

Hughes, on the other hand, contends the State is not necessarily entitled to full reimbursement. He states that the regulation provides the State with the right of subrogation which is subject to equitable principles and cites us to *White v. Sutherland*, (1978) 92 N.M. 187, 585 P.2d 331 and *Hedgebeth v. Medford*, (1977) 74 N.J. 360, 378 A.2d 226.

In *Hedgebeth*, the State of New Jersey brought an action for the amount it had paid to a Medicaid recipient who had successfully obtained recovery from a third-party tortfeasor. The Medicaid recipient argued that the State should pay its pro rata share of attorney's fees, and the New Jersey Supreme Court agreed. The court found that the State's right of recovery by way of the Medicaid recipient was through a right of subrogation. In holding that this right of subrogation was subject to equitable principles, the New Jersey Supreme Court stated:

"There is no basis, however, for concluding that the Legislature did not intend by its very careful use of the term 'subrogation' to import the equitable incidences of that remedy. As we pointed out, that doctrine is distinctively equitable in nature and is generally understood to mean that a party entitled to the right of subrogation should bear or share the reasonable costs which have been incurred in bringing that right to fruition."

74 N.J. at 371, 378 A.2d at 231. *Accord, Shearer v. Moore*, (1980) —— Pa.Super. ——, 419 A.2d 665.

In *White*, White brought a medical malpractice action against Sutherland. After the pretrial conference, the Health and Social Services Department of the State of New Mexico (H.S.S.D.) intervened to recover the amount of thirty-nine thousand dollars ($39,000) which it had paid as medical assistance payments to plaintiff. The trial

court awarded H.S.S.D. ten thousand dollars ($10,000) out of the one hundred thousand dollar ($100,000) settlement between White and Sutherland. H.S.S.D. appealed alleging it was entitled to one hundred percent repayment. The New Mexico Court of Appeals disagreed. It noted that although 42 U.S.C.A. § 1396a(a)(25) requires a state to seek reimbursement of monies spent on medical assistance payments, the statute does not show an intent that a state is to receive one hundred percent reimbursement. The state statute in New Mexico provided that:

"When the department makes medical assistance payments in behalf of a recipient, the department is subrogated to any right of the recipient against a third party for recovery of medical expenses to the extent that the department has made payment."

N.M.Stat.Ann. § 13–1–20.1(B). H.S.S.D. argued that the language "to the extent ... [of] payment" indicated an intent of one hundred percent repayment. The New Mexico Court of Appeals disagreed and read the statute to give effect to all of its provisions, stating at 92 N.M. at 190, 585 P.2d at 334:

"Subrogation, historically, is an equitable remedy. *United States Fidelity & G. Co. v. Raton Nat. Gas Co.*, 86 N.M. 160, 521 P.2d 122 (1974). ' "Subrogation" is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense.' *United States v. Greene*, 266 F.Supp. 976 (D.C.Ill. 1967). In its normal sense, subrogation gives the payor a right to collect what it has paid from the party who caused the damage. *Herrera v. Springer Corporation*, 85 N.M. 6, 508 P.2d 1303 (Ct.App. 1973), rev'd on other grounds, 85 N.M. 201, 510 P.2d 1072 (1973). This right to

---

Board of Tax Commissioners, (1974) 261 Ind. 635, 308 N.E.2d 868. In *City of Indianapolis*, the sole party to the appeal was found to lack standing and the appeal was dismissed. Certainly State, by citing us to *City of Indianapolis v. Indiana State Board of Tax Commissioners, supra*, could not be arguing that, assuming

Hughes lacks standing to challenge the appeal, we must dismiss the State's appeal. In fact, State has failed to inform us how any lack of standing on the part of Hughes is to affect this appeal. Since State has failed to make a cogent argument, we will not discuss this issue further.

collect, being an equitable remedy, is subject to equitable principles. *United States Fidelity & G. Co. v. Raton Nat. Gas Co., supra.*

"Absent a clearly expressed legislative intent requiring otherwise, 'subrogation' is to be given its usual, ordinary meaning. *Tafoya v. New Mexico State Police Board,* 81 N.M. 710, 472 P.2d 973 (1970). No such legislative intent being expressed, H.S.S.D.'s 'subrogation' in § 13–1–20.1(B), supra, is a right of recovery subject to equitable principles."

We find *White* to be persuasive. We do note that in *White* the court was dealing with a statute while we are dealing with an administrative regulation. However, it has been stated that the same rules applicable to statutory construction are applicable to the construction of rules and regulations of administrative boards. 1953 OP.IND. ATT'Y GEN. No. 108. In *State ex rel. Blair v. Gettinger,* (1952) 230 Ind. 588, 105 N.E.2d 161, 168, our supreme court stated:

"If the meaning of a rule is doubtful, the administrative interpretation of it will have much weight unless it is plainly erroneous or inconsistent with the rule itself, *Bowles v. Seminole Rock & Sand Co.* (1944), 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700, but rights created or benefits conferred by an administrative rule should not be extended by interpretation beyond the plain terms of the rule itself, 42 Am.Jur., Public Administrative Law, § 101, p. 431 . . . . Moreover, where, as here, the meaning of the rule is not doubtful, or the language technical, we need not look to the administrative construction of it. [Citations omitted.]"

We find nothing ambiguous about the word "subrogation" as used in 470 I.A.C. 5–1–11. The right of subrogation has consistently been defined as follows: "The right of subrogation is not founded upon contract, expressed or implied, but upon principles of equity and justice, and includes every instance in which one party, not a mere volunteer, pays a debt for another, primarily liable, and which, in good conscience, should have been paid by the lat-

ter." *Home Owner's Loan Corp. v. Henson,* (1940) 217 Ind. 554, 561, 29 N.E.2d 873, 875. *Accord, Fast v. State,* (1915) 182 Ind. 606, 107 N.E. 465; *Aetna Casualty & Surety Co. v. Katz,* (1978) Ind.App., 377 N.E.2d 678. Since subrogation is an equitable doctrine, its application is always dependent upon the facts and circumstances of each particular case. Therefore, it was not error for the trial court to award the State less than one hundred percent reimbursement.

State attempts to distinguish *White* by stating, "the State [in the present case] never agreed to dismiss the case against the defendant tortfeasor and reserve to the trial court jurisdiction to decide between the Subrogor and Subrogee as to the disposition of the settlement proceeds." (Appellant's Reply Brief at 8.) We find this contention to be unpersuasive. Furthermore, we note that the trial court found the parties had stipulated to the trial court's jurisdiction over the issues and the trial court's right to determine the amount the State should be reimbursed. Although State contends in a heading in its Brief that it never stipulated that the trial court possessed the right to determine its reimbursement, State fails to make a cogent argument to that effect and to recite any evidence to support such an argument.

*Issue Three*

State argues that assuming equity does apply to its right to subrogation, the trial court abused its discretion when it awarded the State two thousand five hundred dollars ($2500) since this amount represented only ten percent of the damages obtained by Cowdell. State contends the policy of conservation of the State's funds requires a more reasonable distribution of Cowdell's settlement.

■ An abuse of discretion by a trial court will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable inferences to be drawn therefrom. *Marshall v. Reeves,* (1974) 262 Ind. 107, 311 N.E.2d 807. The burden of showing the trial court abused its discretion is upon the

State, and the State has failed to meet this burden.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.