**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALBERT A. MARTINE,
<u>Plaintiff-Appellant,</u>

and

GINA MARIE MARTINE, individually
and as parent, guardian and
custodian on behalf of Christian
Martine, an infant,
<u>Plaintiff,</u>

v.

THE HERTZ CORPORATION,

<u>Defendant-Appellee,</u>

and

US BENEFIT & RISK MANAGEMENT,
INCORPORATED, a/k/a Public
Employees Insurance Agency,
<u>Defendant-Appellee,</u>

and

PAUL SWINTON, a/k/a Gilliam C.
Swinton,
<u>Defendant.</u>

No. 95-2648

ALBERT A. MARTINE,
Plaintiff-Appellee,

and

GINA MARIE MARTINE, individually
and as parent, guardian and
custodian on behalf of Christian
Martine, an infant,
Plaintiff,

v.                                                          No. 96-1225

US BENEFIT & RISK MANAGEMENT,
INCORPORATED, a/k/a Public
Employees Insurance Agency,
Intervenor-Appellant,

and

THE HERTZ CORPORATION; PAUL
SWINTON, a/k/a Gilliam C. Swinton,
Defendants.

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-94-592-2)

Submitted: September 20, 1996

Decided: December 5, 1996

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

Richard Kranis, RICHARD KRANIS, P.C., Roslyn Heights, New York, for Appellant. Charles R. Hurt, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In these consolidated appeals, Albert Martine challenges the dismissal by summary judgment of his claim against The Hertz Corporation (Hertz) for personal injuries received by Martine in a collision with an automobile rented to its operator by Hertz, and US Benefit & Risk Management, Incorporated (USB) appeals the dismissal of its subrogation claim arising from the payment of medical expenses incurred by Martine. We conclude that the district court did not err in dismissing either claim and affirm in both appeals.

I.

Albert Martine and Gina Maria Martine, individually and as parent, guardian and custodian on behalf of Christian Martine, an infant, filed this action in the Circuit Court of Kanawha County, West Virginia, against Paul Swinton and the Hertz Corporation to recover compensatory and punitive damages for injuries suffered in an automobile accident that occurred in Kanawha County on September 5, 1993. The accident occurred when the vehicle in which the Martines were travelling collided head-on with a vehicle driven by Swinton, an English tourist who had rented the vehicle from Hertz. The defendants removed the case to federal court on diversity grounds.

USB moved to intervene in this action after learning that Gina and Christian Martine had settled their tort actions, leaving only Albert's

3

claim for trial. USB is the legal administrator of Equifax Health Care Information Services, Inc., which is the health claims administrator for the West Virginia Public Employees Insurance Agency (PEIA). All of the members of the Martine family are beneficiaries under the PEIA health insurance plan, and USB submitted a subrogation claim in excess of $124,000 for medical benefits paid by PEIA on behalf of Albert Martine. The district court granted USB's motion to intervene. Before trial, the district court granted summary judgment in favor of Defendant Hertz Corporation on all claims of negligence and negligent entrustment, leaving only Albert Martine's claim against Swinton for trial.

The district court held a four-day trial by jury solely on the issue of Albert Martine's damages, Swinton having conceded liability. Before the jury announced its verdict, Martine moved to dismiss USB's complaint on the ground that he would not be "made whole" because Swinton had insufficient funds to satisfy the probable judgment. The only asset Swinton possessed to satisfy the judgment was a $100,000 insurance policy provided when he rented the automobile. The jury returned a verdict in favor of Martine in the amount of $650,000, specifically including $36,800 for past medical expenses and $5,000 for future medical bills. The jury awarded these amounts despite evidence presented at trial that PEIA had paid in excess of $124,000 in medical benefits to Martine related to the accident and that Martine would require further medical care.

After the jury returned its verdict, the district court granted Martine's motion to dismiss USB's complaint as intervenor. Relying on the West Virginia Supreme Court's decision in Kittle v. Icard, 405 S.E.2d 456 (W. Va. 1991), the court concluded that USB was not entitled by subrogation to recover any portion of Martine's judgment because Martine would not be "made whole" by the amount he would be able to collect. On that basis, the district court determined that in equity Martine should not be further undercompensated by apportioning any part of his judgment to USB despite PEIA's medical payments to him.

Martine appeals in No. 95-2648 from the grant of summary judgment to Hertz, and USB appeals in No. 96-1225 from the district court's dismissal of its subrogation claim.

4

II.

No. 95-2648

On Martine's appeal, we conclude that the district court did not err in granting summary judgment to Hertz.

The court first rejected Martine's negligent entrustment theory as a matter of law. The court reasoned that on the undisputed facts of record a finder of fact could not properly find that in renting its vehicle to Swinton Hertz could have known that he was likely to cause an unreasonable risk of harm to others. That is an essential element of the tort of negligent entrustment under West Virginia law. See Huggins v. Tri-County Bonding Co., 337 S.E.2d 12, 17 (W. Va. 1985). The mere fact that Swinton was known to be a citizen of Great Britain where motorists drive on the left of roadways would not suffice to support such a finding. It was undisputed that Swinton had a valid operator's license that was presented to Hertz before the vehicle was entrusted to him by rental. There is no forecast of evidence in the record that Swinton had any discernible physical or mental disabilities when he obtained the car from Hertz.

We affirm the grant of summary judgment rejecting the negligent entrustment claim on the reasoning of the district court.

The district court then rejected, as a matter of law, Martine's claims of negligence by Hertz in failing, through its employees, to inquire of Swinton whether he was familiar with applicable local rules of the road and in failing specifically to warn him of the rule of right-side driving, and in failing to train and supervise their employees to make such inquiries and give that warning. The district court concluded that on the undisputed facts of record, such failures could not rationally be found to have been the proximate causes of the accident and its consequences. It was undisputed, indeed conceded by Swinton, that he was aware of the local rules of the road, and specifically of the right-side driving rule, and had in fact observed those rules in driving in other countries when they also obtained.

We affirm the grant of summary judgment rejecting these negligence claims on the reasoning of the district court.

5

III.

No. 96-1225

USB makes several arguments in its effort to overturn or alter the district court's judgment dismissing its subrogation claim. The first contention is that the "made-whole" rule announced in Kittle v. Icard, supra, does not apply when a jury has rendered a verdict determining the plaintiff's damages. Alternatively, USB contends that if the made-whole rule does apply, equitable principles demanded that it neverthe-less receive a partial recovery of the amount it paid as medical expenses measured in either of two proposed mathematical methods.

A.

As a preliminary matter, we note that the West Virginia legislature has provided PEIA with a statutory right to subrogation. See W. Va. Code § 5-16-3(c) (1990). The legislative rules specifying an insured's rights under the Public Employees Insurance Act provide: "In the event that benefits are paid to any insured for bodily injury caused by a third party, the Public Employees Insurance Board shall be and is hereby subrogated (substituted) with respect to any insured's right (to the extent of the value of the benefits paid) to any such claim against such third party causing such bodily injury." W. Va. Code State R. tit. 151, § 1-11.1 (1985). In addition, the PEIA plan agreement providing Martine's insurance contract includes a statement that reads, "To the extent of the value of benefits paid, the [PEIA] shall be subrogated and succeed to all rights of an insured to recover from any person or entity which may be liable for expenses incurred for covered ser-vices." JA at 4. The West Virginia Supreme Court has held that sub-rogation clauses in insurance contracts are valid and enforceable. Nationwide Mutual Ins. Co. v. Dairyland Ins. Co., 445 S.E.2d 184, 186 (W. Va. 1994); Federal Kemper Ins. Co. v. Arnold, 393 S.E.2d 669, 671 (W. Va. 1990).

The seminal case defining West Virginia's law of subrogation is Kittle v. Icard, 405 S.E.2d 456 (W. Va. 1991). In that case the West Virginia Supreme Court considered the right of the state's Depart-ment of Human Resources (DHS) to subrogation in the amount paid in medical expenses of a settlement payment made by an insurer that

6

did not adequately compensate the injured party for his damages. The case involved a twenty-three month-old child who was struck by a car and dragged 70 feet on a concrete road. The child's mother was receiving assistance from DHS, and the mother executed an assignment of benefits form in favor of DHS in exchange for eligibility for DHS's assistance with the child's medical expenses. The child's initial medical expenses totalled $27,317, and the car driver's insurance company paid a settlement of $100,000, the limit of the policy. However, the child's guardian ad litem testified that the value of the child's claim was between $200,000 and $250,000, and the trial court found the driver to be judgment proof.

DHS sought subrogation of the award in the amount of the child's medical expenses that it had paid; the child's mother claimed that subrogation was inappropriate because the settlement payment had not "made her whole." As does USB in this case, DHS argued that the trial court erred in applying common law subrogation principles such as the "made-whole rule" instead of a statutory provision that specifically provided for subrogation. As part of the Medicaid program, the West Virginia Code stated, "[DHS] shall be legally subrogated to the rights of the recipient against the person so liable, but only to the extent of the reasonable value of the medical assistance paid . . . ." W. Va. Code § 9-11-5(a) (1990). The West Virginia Supreme Court began by noting, "`Absent a clearly expressed legislative intent requiring otherwise, "subrogated" is to be given its usual, ordinary meaning.'" Kittle, 405 S.E.2d at 460 (quoting White v. Sutherland, 585 P.2d 331, 334 (N.M. 1978)). Because the legislature did not evince an intent to vary the ordinary meaning of the concept, the court then noted that "subrogation gives the payor the right to collect what it has paid from the party who caused the damage. However, because this right to collect is an equitable remedy, it is subject to equitable principles." Id.

After canvassing the decisions in a number of other states that held that a legislature's use of the term "subrogation" demonstrated an intent to import the equitable consequences of that remedy, the West Virginia court stated that "`the right of subrogation depends upon the facts and circumstances of each particular case.'" Id. at 463 (quoting Huggins v. Fitzpatrick, 135 S.E. 19, 20 (W. Va. 1926)). Continuing, the court held that "`[s]ubrogation, being a creature of equity, will not

7

be allowed except where the subrogee has a clear case of right and no injustice will be done to another.'" Id. (quoting Buskirk v. State-Planters' Bank Trust Co., 169 S.E. 738, 738 (W. Va. 1933)). Because the legislature did not alter the usual and ordinary meaning of the concept of subrogation in the applicable statute, the Court held that equity should be considered. And, on that basis, the Court then held that the trial court properly had considered the equities in deciding not to permit subrogation when the child had been unable to collect the full value of the claim. "[W]e conclude that the lower court did not err when it ruled that the DHS was not entitled to be subrogated to [the child's] settlement proceeds because the settlement had not made him `whole.'" Id. at 464.*

USB cites Bell v. Federal Kemper Ins. Co., 693 F. Supp. 446 (S.D. W. Va. 1988), for the proposition that the existence of a jury verdict in this case precludes Martine from arguing that he was not "made whole." In Bell, the federal district court interpreted West Virginia law to prevent plaintiffs from avoiding subrogation claims based on the "not made whole" theory when they have obtained a jury verdict and collected on the award. Citing a case from Washington, the court noted, "`[T]he jury determined the money necessary to make [the defendant] "whole." The fact [that defendant] has placed a greater value on his damage than the jury did does not allow him to relitigate the issue in a subsequent proceeding.'" Bell , 693 F. Supp. at 450 (quoting United Pacific Ins. Co. v. Boyd, 661 P.2d 987, 990 (Wash. 1983)).

_____

*The West Virginia Supreme Court more recently upheld the equitable doctrines of subrogation in the context of uninsured and underinsured motorists. The West Virginia legislature has provided, "An insurer paying a claim under the endorsement or provisions . . . shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury . . . to the extent that payment was made." W. Va. Code § 33-6-31(f) (1990). However, in State ex rel. Allstate Ins. Co. v. Karl, 437 S.E.2d 749 (W. Va. 1993), the court held "that the right of subrogation [under section 33-6-31(f)] is not available where the policyholder has not been fully compensated for the injuries received and still has the right to recover from other sources. Subrogation is permitted only to the extent necessary to avoid a double recovery by such policyholder." Karl, 437 S.E.2d at 757.

8

USB's reliance upon Bell is unavailing. In both Bell and Boyd, supra, the plaintiff obtained a jury verdict or a settlement and then collected its full value. The plaintiffs in those cases then sought to avoid their insurers' subrogation rights by claiming their damages were greater than the awards, but the courts recognized that a jury verdict defines the full value of a plaintiff's damages. In this case, by contrast, Martine does not contend that the jury verdict does not represent the full value of his damages, but rather that he is unable to collect the full value of the verdict. For this reason, Bell is inapposite.

USB also argues that Kittle is distinguishable from this case because USB has a contractual right to subrogation while the insurer in Kittle only had a statutory right to the plaintiff's settlement proceeds. In support of its theory USB cites Fields v. Farmers Ins. Co., Inc., 18 F.3d 831 (10th Cir. 1994). In that case, involving Oklahoma state law, the Tenth Circuit held that a "not made whole" rule should not apply when an insurance contract has unambiguously provided the insurance company with subrogation rights in the event an insured obtains a verdict or a settlement. Though the Oklahoma Supreme Court had not expressly ruled on the issue of whether a plaintiff must submit to subrogation when he has not been fully compensated, the federal appellate court there distinguished between "equitable subrogation" and subrogation provided by contract. Id. at 835. Where the contract provided, "Subrogation means the Plan's right to recover any of its payments . . . which you or your dependent later recover from the third party or the third party's insurer," the court held that the "not made whole" rule should not apply. Id. "`Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting.'" Id. at 836 (quoting Higginbotham v. Arkansas Blue Cross & Blue Shield, 849 S.W.2d 464, 466 (Ark. 1993)).

USB claims that despite Kittle's application to cases of equity, the logic of Fields requires that West Virginia law enforce subrogation rights when an insurance contract specifically provides for them. However, Kittle defines subrogation in such a way as to require that equity be considered whenever an insurer invokes its right. "`Whether legal or conventional, subrogation is an equitable remedy. The rem-

9

edy is for the benefit of one secondarily liable who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor.'" Kittle, 405 S.E.2d at 460 (quoting State Farm Mut. Auto Ins. Co. v. Foundation R. Ins. Co., 431 P.2d 737, 741 (N.M. 1967)). Completing that idea, the West Virginia court noted, "`"Subrogation" is a term of legal art which we assume would not be employed by the drafters . . . unless they intended it to be construed in its normal sense.'" Id. (quoting United States v. Greene, 266 F. Supp. 976, 979 (N.D. Ill. 1967)). The district court therefore properly utilized equitable principles in construing PEIA's contract in this case.

B.

Assuming Kittle's application to this case, USB contends that the district court should have employed equitable principles to allow it subrogation at least in the amount the jury awarded specifically for medical expenses. The district court determined that the West Virginia Supreme Court's pronouncements in Kittle and Karl, supra, defined equity as per se denying insurers any recovery when insureds were not fully compensated by a settlement or judgment. And, noting that Martine received less than one-sixth of the amount to which he was entitled and would be further undercompensated for his injuries if USB were entitled to subrogation the district court held that even aside from any per se rule, the equities favor Martine over USB. We find no abuse of discretion or legal error in that conclusion.

In No. 95-2648 - AFFIRMED
In No. 96-1225 - AFFIRMED

10