249 P.2d 759

**FARRAR et al. v. HOOD et al.**

No. 5527.

Supreme Court of New Mexico.

Oct. 10, 1952.

Rehearing Denied Nov. 18, 1952.

The pertinent provisions of the Act read:

"It shall be unlawful hereafter for any person, copartnership, association, common-law trust or trusteeship or corporation (hereinafter called the promoter), either as principal or through brokers or agents, to sell or offer for sale by means of any advertisements, circulars, prospectus or personal solicitation, or by any other form of public offering, any speculative securities in this state unless there first shall have been filed with the state bank examiner, and approved by him, a statement in duplicate * * * and in no event shall any speculative securities be sold or offered for sale until a permit shall have been issued as provided for hereinafter." 1941 Comp. § 50–1702.

Brand & Cowan, Hobbs, for appellants and cross-appellees.

Frazier, Quantius & Cusack, Roswell, for appellees and cross-appellants.

COMPTON, Justice.

The decisive questions presented by this appeal are (a) whether the sale of speculative securities in contravention of Chapter 44, Laws of 1921, 50–1701, 1941 Comp. is void or voidable; and if voidable, (b) whether the purchaser of such securities is barred by laches from maintaining an action for rescission.

Pat K. Farrar, title successor of James W. Sanders, deceased, and Clarence E. Dallas, plaintiffs below, instituted this action against the defendants, L. Morgan West, trustee, Royalty Pooling Company of Colorado Springs, Colorado, H. C. Hood, and others to quiet title to certain mineral interests situated in Lea County. The complaint charges that plaintiffs, Clarence E. Dallas and the said James W. Sanders, by separate conveyances, on September 12, 1925 and November 1, 1930 respectively, conveyed to the defendant L. Morgan West, trustee of Royalty Pooling Company, the mineral interests here involved in exchange

for unit interest certificates representing aliquot parts of a trust estate of 2,000,000 such units in Royalty Pooling Company and that neither the said West nor the Royalty Pooling Company had been authorized to engage in the sale of speculative securities at the time of such conveyances. The complaint also charges fraud practiced by the said West as an inducement in procuring the conveyances.

The answer contains admissions and denials. The answer admits that the defendants, L. Morgan West, trustee, and Royalty Pooling Company, as to the Dallas conveyance, had failed to obtain from the State Bank Examiner a permit to engage in the sale of speculative securities. The charge of fraud, however, is specifically denied. Numerous special defenses are pleaded, among which is that plaintiffs are barred by their laches from prosecuting the action.

The cause was tried to the court without a jury, and at the conclusion of which, the issues were found in favor of the plaintiff Dallas and against the plaintiff Farrar. Judgment was entered accordingly, from which the defendants West, trustee, Royalty Pooling Company and H. C. Hood appeal. The plaintiff Dallas cross-appeals, and plaintiff Farrar appeals.

The trial court's findings and conclusions are as follows:

"Findings of Fact

"1.  January 25, 1924, L. Morgan West executed an instrument entitled Declaration of Trust, which instrument recited that its purpose would be for the Trustee to obtain legal title to mineral interests for the pooling of said mineral interests and that as consideration to the owners of mineral rights for their executing mineral deeds to the Trustee, there would be issued to them proportionate units of the Royalty Pooling Company, the name under which the trust was to be operated. Said Declaration of Trust was filed for record in the office of the County Clerk of Lea County, New Mexico, September the 14th, 1928, recorded at Book 4, Page 171, Miscellaneous Records thereof.

"2.  September 12, 1925, Clarence E. Dallas and wife executed a mineral deed in favor of L. Morgan West, Trustee for Royalty Pooling Company for an undivided one-half interest in and to all of the oil, gas and other minerals underlying the S½ S½, Section 25, Township 11 South, Range 33 East, N.M.P.M., which deed was recorded in the office of the County Clerk of Lea County September 21, 1925, Volume 2, Page 549 of the Deed Records.

"3.  That said deed recited payment of $1 consideration, and L. Morgan West thereafter issued to Clarence E. Dallas Certificate Number 247 for 3,200 units in the Royalty Pooling Company.

728

"4. That the Certificate of Royalty Pooling Company was a speculative security within the purview of the Blue Sky Laws of the State of New Mexico.

"5. That at the time of the execution of the deed and of the issuance of the Certificate, neither the defendant West nor the Royalty Pooling Company had obtained a Blue Sky permit therefor.

"6. That at the time of securing the mineral deed from plaintiff Dallas and wife, West stated that he expected to pool 50,000 acres and stated that they could all make money out of the transaction.

"7. That the proof offered by plaintiff Dallas does not sustain the allegation of fraud.

"8. That the plaintiff Dallas in 1930 received a letter from the defendant West in which he was advised that not more than 22,000 acres had been gotten together under the pooling arrangement.

"9. Defendant West transferred title to the minerals deeded by plaintiff Dallas and his wife on August 29, 1948 to H. C. Hood and that such deed is recorded in Book 106, Page 226 of the Deed Records of Lea County, New Mexico.

"10. That plaintiff Dallas did nothing prior to the filing of this suit to escape the effects of the deed executed by him to the defendant L. Morgan West September 12, 1925.

"Conclusions of Law

"1. That the Royalty Pooling Company Certificate is a speculative security under the Blue Sky Laws of the State of New Mexico.

"2. That at the time of the execution of said Certificate of participation in the Royalty Pooling Company, said company nor the defendant L. Morgan West, Trustee, had not obtained a permit as required by the Blue Sky Laws of the State of New Mexico, and that the Certificate of the Royalty Pooling Company was and is void for that reason."

As to the plaintiff Farrar, the Court makes the following:

"Findings of Fact

"1. November 1, 1930, Jim W. Sanders, a single man, executed to Royalty Pooling Company of Colorado Springs, Colorado, L. Morgan West, Trustee, an undivided one-sixteenth interest in and to all of the oil, gas and other minerals in and under the N½ of Section 13, Township 11 South, Range 33 East, N.M.P.M., Lea County, New Mexico. This deed was recorded February 16, 1931, Book 27, Page 175 of the Deed Records of Lea County, New Mexico. That such deed recites consideration of $10.

"2. That upon the execution of the deed and simultaneous with its delivery to L. Morgan West, the defendant West issued

to Jim W. Sanders Certificate Number 721 for 300 units in the Royalty Pooling Company.

"3. That at the time of the execution of the deed by Jim W. Sanders and at the time of the execution of the Certificate by the Royalty Pooling Company, a permit had been obtained from the State Bank Examiner under the Blue Sky Laws of the State of New Mexico for the issuance of said speculative security.

"4. That the plaintiff has not established the allegations of fraud contained in the complaint.

"Conclusions of Law

"1. That plaintiff Farrar is not entitled to relief against the defendant West.

From the foregoing, it appears that Judgment should be entered in favor of the plaintiff Dallas quieting his title and that the Certificate held by said plaintiff in the Royalty Pooling Company should be cancelled and surrendered and that the prayer of plaintiff Pat. K. Farrar for relief should be denied."

We have examined the record and concluded that the findings are amply supported by substantial evidence. Hence, the facts thus found are the facts upon which the case is to be decided here.

It must be conceded that the transaction as to Dallas involves the sale of speculative securities in violation of the Act. Marney v. Home Royalty Ass'n of Oklahoma, 34 N.M. 632, 286 P. 979. The defendant Hood, however, makes the point that the transaction is voidable only and that Dallas, by his laches, is barred from asserting claims for rescission.

It is a general rule that transactions in violation of a statute prescribing penalties are void. But the rule has its exceptions. The language of the statute, its subject matter and the purpose to be accomplished in its enactment, are matters of consideration in determining whether a contract is void or voidable. From a reading of the Act, we find nothing therein suggesting a legislative policy. It simply provides that it shall be unlawful for any one to sell speculative securities without an authorizing permit to do so. It does not declare that the sale of securities without a permit shall be void or voidable. We conclude, therefore, that the transaction was not void for illegality but that the sale by West was voidable for contravention of the statute. Compare Kyle v. Chaves, 42 N. M. 21, 74 P.2d 1030; Niblack v. Seaberg Hotel Co., 42 N.M. 281, 76 P.2d 1156.

Previously, the exact question has not arisen in this jurisdiction, but in New Mexico Potash & Chemical Co. v. Independent Potash & Chemical Co., 10 Cir., 115 F.2d 544, 546, Judge Bratton, formerly a member of this court, said:

"These provisions * * * are designed to safeguard the public against imposition through shady or insubstantial schemes and the securities based upon them. * * * The gravamen of the cause of action relied upon was that Independent transferred to plaintiff a speculative security for which no permit had been issued authorizing its sale in New Mexico, in exchange for the right of plaintiff under the contract with the permittee. The stock was issued by a corporation organized under the laws of Arizona, and the Securities Act of New Mexico does not provide that speculative securities issued by a foreign corporation but sold in the state without an authorizing permit shall be void or voidable. Instead, it only provides that it shall be unlawful for any one to sell or offer for sale within the state speculative securities for which an authorizing permit has not been issued. The stock was not void for illegality. Its sale or conveyance to plaintiff was voidable for contravention of the statute."

In another federal case, A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U. S. 38, 61 S.Ct. 414, 415, 85 L.Ed. 500, wherein stock was sold in violation of the Federal Securities Act, 15 U.S.C.A. § 77a et seq.—a counterpart to our Blue Sky Law—the court reached a similar conclusion. The Idaho Supreme Court held the transaction was in violation of a penal statute, consequently void. The case went to the U. S. Supreme Court. In reversing the judgment that court recognized the fact that the stock had been sold in violation of the Act and went on to say:

"The essential purpose of the statute is to protect investors by requiring publication of certain information concerning securities before offered for sale. * * * No provision of the Act declares that in the absence of registration, contracts in contemplation of or having relation to a public offering shall be void. * * * The rule that contracts in contravention of public policy are not enforceable came under discussion in Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238, and Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356, 357, 51 S. Ct. 476, 477, 75 L.Ed. 1112. In the latter the opinion declares, the principle 'should be applied with caution and only in cases plainly within the reasons on which that doctrine rests. It is only because of the dominant public interest that one who, like respondent, has had the benefit of performance by the other party will be permitted to avoid his own promise.' The protean basis underlying this doctrine has often been stated thus—No one can lawfully do that which tends to injure the public or is detrimental to the public good. If

it definitely appears that enforcement of a contract will not be followed by injurious results, generally, at least, what the parties have agreed to ought not to be struck down."

Plaintiffs strongly rely on Desmet v. Sublett, 54 N.M. 355, 225 P.2d 141, and Kaiser v. Thomson, 55 N.M. 270, 232 P.2d 142, wherein we said a party cannot maintain an action, if in order to establish his cause of action, he must rely in whole or in part, on an illegal or immoral act or transaction to which he is a party or where he must base his cause of action, in whole or in part, on a violation by himself of the penal or criminal laws. We are not unmindful of these decisions but these cases cannot be regarded as authority for the proposition raised here. In these cases, the offending parties were seeking affirmative relief. Manifestly, the defendants merely seek a dismissal of the case.

The trial court found that an authorizing permit had been issued for the sale of the securities at the time James W. Sanders made the conveyance to the trust. It also found the transaction free from any fraud. As previously stated, these findings are supported by substantial evidence and are, therefore, conclusive as to the claims of the plaintiff, Farrar.

But the court failed to make findings as to laches, ostensibly, for the reason that a finding that the transaction was void, was determinable of this point. We think the court committed error in failing to determine the question by its finding. There is evidence that the Dallas minerals were of small value when the conveyance was made, possibly $5 per acre. In 1947 oil was developed in the immediate area, causing the minerals in question to spiral, and when the suit was instituted, minerals in that area were valued at $100 per acre and more. Furthermore, there is evidence that the remaining trust units are now in the hands of some 4,000 owners whose interests would be adversely affected should the contract be voided. It was not until October 3, 1949, that Dallas took action to rescind the contract. In the meantime, on August 29, 1948, the trustee, in liquidating the trust, conveyed the Dallas minerals to defendant, H. C. Hood, for a valuable consideration. Such inaction does not commend itself to a court of equity.

It is thus clear that the court failed to specifically find upon a material point in issue. In such case silence upon a material point must be regarded as a finding against the party having the burden of proof, in this case, defendant Hood. Ringle Development Corporation v. Town of Tome Land Grant, 49 N.M. 192, 160 P.2d 441; Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740. We will, therefore, treat the supplied or presumed finding as made. It will be set aside, however, as having no

support in the evidence. Of course we could remand the cause for further findings, McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000, but that should not be done in the absence of exceptional circumstances. Such circumstances do not appear as the issue of laches was fully litigated and no cause for remand has been suggested.

At 21 C.J. 225, Section 220 (equity) we find the applicable rule:

"* * * A person may not withhold his claim, awaiting the outcome of an enterprise, and then, after a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise. Accordingly, if the property involved is of a speculative of fluctuating character, more than ordinary promptness is required of a claimant; he must press his claim at the earliest possible time. This rule is applied with great strictness in the case of mining property, since it is of specially precarious nature, and is exposed to the utmost fluctuations in value." * * * See also 30 C.J.S., Equity, § 118.

The authorities are in accord: Patterson v. Hewitt, 11 N.M. 1, 66 P. 552, 55 L.R.A. 658, affirmed 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214; Little Bill v. Swanson, 64 Wash. 650, 117 P. 481; Twin-Lick Oil Company v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Gil-

dersleeve v. New Mexico Mining Company, 161 U.S. 573, 16 S.Ct. 663, 40 L.Ed. 812.

In Hayward v. National Bank, 6 Otto 611, 24 L.Ed. 855, the court said:

"* * * If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to his advantage." * * *

In Twin-Lick Oil Company v. Marbury, supra, the court says:

"* * * No delay for the purpose of enabling the defrauded party to speculate upon the chances which the future may give him of deciding profitably to himself whether he will abide by his bargain, or rescind it is allowed in a court of equity. * * * The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands today is worth nothing to-morrow." * * *

And in Winn v. Shugart, 10 Cir., 112 F.2d 617, 622, it was held:

"* * * The duty to act with dispatch is especially imperative where one claims an interest in property that

is highly speculative. One may not withhold his claim to a highly speculative venture, such as was involved in these wildcat oil and gas leases and permits, to await the outcome of an effort to develop them put forth by another, and then when his efforts are crowned with apparent success, come in and claim the fruits thereof. Such a course does not commend itself to a court of equity. * * *"

 While the validity of the trust was not attacked by the pleadings, plaintiffs make the further point that it is a nullity and, having no legal existence, it could neither acquire nor convey title. We fail to appreciate the force of the attack. The conveyance is not to "Royalty Pooling Company." Even if it were, no good reason is suggested why the deed is void, except the assertion that the grantee has no legal entity. But the grantee is a natural person and as such is capable of receiving and holding title, even if as a trustee. It is difficult to believe that this point is seriously urged or argued. We find it without merit.

It follows from what has been said that plaintiff Dallas is barred by his laches from maintaining the action. Other assignments are made by the parties, but these have been resolved by the conclusion reached or deemed without merit. The judgment will be affirmed in part, and in part reversed. It will be affirmed as to plaintiff Farrar but reversed as to plaintiff Dallas, with directions to the trial court to enter an order dismissing the complaint as to defendants, H. C. Hood, L. Morgan West, Trustee and Royalty Pooling Company of Colorado Springs, Colorado. And It Is So Ordered.

SADLER, McGHEE and COORS, JJ., concur.

LUJAN, C. J., not participating.