732 P.2d 863

**Steve VERCHINSKI, d/b/a Solar Electric Co. of New Mexico, Plaintiff-Appellant,**

v.

**Richard L. KLEIN and Jane Klein, his wife, Defendants-Appellees.**

No. 16035.

Supreme Court of New Mexico.

Jan. 21, 1987.

Rehearing Denied Feb. 27, 1987.

Roehl & Henkel, Ronald W. Henkel, Albuquerque, for plaintiff-appellant.

Richard L. Klein, Jane Klein, pro se.

## OPINION

SOSA, Senior Justice.

This appeal arises from the trial court's dismissal of the amended complaint of plaintiff Steve Verchinski, d/b/a Solar Electric Company of New Mexico (Verchinski), against defendants Richard and Jane Klein (Kleins) for damages from a breach of contract and for foreclosure of a materialmen's lien. Kleins filed an answer affirmatively pleading that Verchinski was barred from recovering under the contract and under the materialmen's lien because he did not have a contractor's license as required under the provisions of the New Mexico Construction Industries Licensing Act (the Act), NMSA 1978, Sections 60-13-1 to—58 (Repl.Pamp.1984). On April 15, 16, and 17, the trial court heard evidence on whether Verchinski was acting as a contractor when he entered into an agreement with the Kleins to provide three photovoltaic irrigation systems. At the conclusion of the hearings, Kleins filed a motion for dismissal of this suit. The trial court granted the motion and dismissed Verchinski's complaint with prejudice. We reverse.

The question on appeal is whether Verchinski's activities under his contract with Kleins brought him within the licensing provisions of the Act, thus barring him from maintaining an action to recover money due under his contract.

## FACTS

In 1982, Verchinski established his business and became a dealer for WEBA Solar, Incorporated, a solar thermal and photovol-

taic systems distributor. In December 1982, WEBA informed Verchinski that Kleins might be interested in a solar irrigation system to water Christmas trees, which would be planted on land they owned in Tijeras Canyon, New Mexico.[1]

Verchinski, as WEBA's dealer, entered into design agreements with Kleins for three photovoltaic irrigation systems. WEBA engineers actually designed the systems in accordance with the specifications of Kleins' property provided by Verchinski. In accordance with NMSA 1978, Section 7–2–17(B)(1) (Repl.Pamp.1986), the designs were submitted to the Energy and Minerals Department of the State of New Mexico and were approved. Subsequently, because the pump unit supplied by WEBA was inappropriate for the irrigation systems, the systems were redesigned using components manufactured and designed by Photocom, another distributor of photovoltaic systems. These redesigns were submitted to the State and approved.

On June 3, 1983, the Kleins and Verchinski entered into a "Quotation" contract. That contract provided that Verchinski would furnish materials for three photovoltaic irrigation systems at a total cost of $55,960.97. The contract further provided that 50% payment was due upon delivery of the materials to the site and the remaining 50% was due upon state approval and acceptance. Within a few weeks, the materials were delivered and Kleins paid 50% of the total cost as required under the contract.

The equipment and materials were installed by various licensed contractors. Verchinski and the Kleins signed a "work contract" with Mike LaVine and John Taylor. The agreement provided that LaVine and Taylor, as contractors-subcontractors, would "[i]nstall [the] photovoltaic base and array as per specifications [of the approved] design." That contract stipulated that $1680 was the total cost for installation. LaVine, a licensed electrician, did the

electrical wiring and Taylor prepared the base for the pumps, which were installed by Don Miller, a licensed contractor. The preparatory work for the irrigation systems admittedly was the responsibility of the Kleins. For example, the Kleins hired a licensed well driller, Earl Taute, to drill a third well, and the Kleins did all the trenching, including running the pipe from the tanks to the trees. After the equipment and materials were installed, the State approved the three systems, thereby making the systems eligible for a tax credit refund. Kleins received a refund of $55,960.97, plus $3000 in interest, but they failed to pay the remaining 50% due under the terms of the contract. On September 26, 1983, Verchinski filed a claim of lien in the amount of $30,453.34 against certain lots where the solar irrigation systems, including the collector panels, were situated. In February 1984, certain liens were released and a new claim of lien was executed. This lawsuit followed.

In his amended complaint, Verchinski claimed that he entered into an agreement with Kleins to sell materials for three photovoltaic irrigation systems and that Kleins refused to make payment on the outstanding balance due on the contract. In their defense to Verchinski's complaint, Kleins alleged that Verchinski was an unlicensed contractor who could not maintain this action. It is undisputed that Verchinski was not a licensed contractor when he entered into the agreement with the Kleins in the Summer of 1983.

The Act provides that "[n]o person shall engage in the business of [a] contractor within the state without a license issued by the division classified to cover the type of work to be undertaken." NMSA 1978, § 60–13–12(A) (Repl.Pamp.1984). The purpose of the Act is to protect the public from incompetent and irresponsible builders. *Olivas v. Sibco, Inc.*, 87 N.M. 488, 490, 535 P.2d 1339, 1341 (1975); *Peck v. Ives*, 84 N.M. 62, 66, 499 P.2d 684, 688

---

1. In 1982 the Legislature enacted a tax credit refund for the cost of equipment installed as part of a solar energy system for irrigation purposes. *See* NMSA 1978, § 7–2–17(A) (Repl. Pamp.1986).

(1972). In effectuating this purpose, the Act provides for sanctions against those engaging in "contracting" who fail to comply with the statute. *See e.g., Kaiser v. Thomson*, 55 N.M. 270, 232 P.2d 142 (1951); *Fleming v. Phelps-Dodge Corp.*, 83 N.M. 715, 496 P.2d 1111 (Ct.App.1972). The express statutory provision precluding an unlicensed contractor from maintaining an action under a contract which constitutes "contracting" within the meaning of the Act provides:

> No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation *for the performance of any act for which a license is required by the Construction Industries Licensing Act* without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

NMSA 1978, § 60–13–30(A) (Repl.Pamp. 1984) (emphasis added).

Verchinski contends that his cause of action is based on breach of contract for materials supplied to the Kleins and that he did not engage in any "contracting" for which a license was required by the Act. Quite simply, Verchinski maintains that a contractor's license is unnecessary for a supplier of materials. Verchinski concedes that he acted as an agent for the Kleins when he arranged for the installation of the tanks, pumps, base preparation, and electrical work, but he argues that he had no underlying contract or responsibility for the installation of the systems. Verchinski asserts that the Kleins were ultimately responsible and in control of the installation work as evidenced by their separate contract with LaVine and Taylor. We find merit in Verchinski's contentions.

The Act under Section 60–13–3(A) defines contractor as "any person who undertakes, offers to undertake, or purports to have the capacity to undertake, by himself or through others, contracting." Subsection (C)(1), however, excludes from the definition of contractor "any person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them in the performance of, the work of a contractor." The language in Subsection (C)(1) is identical in form to the California statute which exempts application of the contractor's licensing laws to persons who only furnish or supply materials. *See* Cal.Bus. & Prof.Code § 7052 (West 1975). The court in *Steinbrenner v. J.A. Waterbury Constr. Co.*, 212 Cal. App.2d 661, 28 Cal.Rptr. 204 (1963), held that Section 7052 excluded from the requirements of the licensing law any person who furnished materials or supplies without fabricating them into, or consuming them in the performance of the work of a contractor. We agree and would construe our Subsection (C)(1) accordingly.

In the instant case, however, the trial court also found that Verchinski entered into an agreement to install the three irrigation systems, and that Verchinski constructed and installed the systems on Kleins' property by ordering and delivering equipment and by arranging for the installation of pumps, piping, storage tanks, electrical wiring, cement pillars, and platforms. The trial court concluded that these activities required a contractor's license.

Verchinski challenges the judge's finding that he contracted to install the three irrigation systems and that his activities constituted "contracting" as defined by the Act. As stated above, Verchinski maintains that Kleins had a separate contract for the installation work. We agree.

■ Whether Verchinski contracted to install the three irrigation systems is an issue determined by the documentary evidence. Where the issue to be determined rests upon interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions. *See Brooks v. Tanner*, 101 N.M. 203, 205, 680 P.2d 343, 345 (1984).

■ In reviewing the contract dated June 3, 1983, we find that this was a contract for materials only. The agreement provided that Verchinski would furnish "materials" for irrigation systems 1, 2, and

3 for the sum total of $55,960.97. Kleins argue that this contract provided for the installation of the equipment and materials by the language stating that Verchinski was authorized "to to do the work specified." It is axiomatic that in construing the provision of a written contract the instrument must be considered as a whole. *Manuel Lujan Ins., Inc. v. Jordan*, 100 N.M. 573, 575, 673 P.2d 1306, 1308 (1983). In applying this principle, it becomes clear that the "work specified" in the contract was not for the installation work, but rather for the delivery of materials. Verchinski had no installation responsibility under this contract. The ordering and delivering of materials or the mere arranging for their installation does not bring suppliers of materials into the realm of the definition of "contractor" under Section 60–13–3(A) where they are not, and their contracts do not place them, in control of the installation. *See Industrial Power v. Western Modular Corp.*, 623 P.2d 291, 295 (Alaska 1981).

Verchinski's firm, which was acting as a dealer for photovoltaic systems distributors, entered into an agreement with Kleins to furnish materials for three solar irrigation systems. Verchinski entered into design agreements with Kleins. All materials were manufactured by Photocom and delivered to Kleins on the site. Verchinski was not in control of the installation work. The materials were ultimately fabricated or consumed, but this occurred under a separate work contract with licensed contractors.

Under these circumstances, it appears that the Kleins are attempting to escape their obligation under their contract, even though they have received full protection contemplated by the statute, and have received a refund far in excess of any payments made for design and installation of the systems. As we stated in *Peck v. Ives*, 84 N.M. at 66, 499 P.2d at 688:

> In view of the severity of the sanctions and the forfeitures which could be involved, we are reluctant to construe the statute more broadly than necessary for the achievements of its purpose. The statute should not be transformed into an "unwarranted shield for the avoidance of a just obligation."

Verchinski had no installation responsibilities under the contract of June 3, 1983. Therefore, he was not required to obtain a contractor's license in order to obtain payment in compensation for his performance of that contract.

We hold therefore that Verchinski should be allowed to pursue his claim. The case is reversed and the district court is instructed to vacate its dismissal of Verchinski's complaint and to reinstate the matter on its trial docket.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS, J., concur.