777 P.2d 908

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Sam S. JENKINS, d/b/a Customcraft Systems, Defendant–Appellant.**

No. 10034.

Court of Appeals of New Mexico.

May 23, 1989.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sam S. Jenkins, Sr., Albuquerque, pro se.

## OPINION

BIVINS, Chief Judge.

Sam S. Jenkins (defendant), d/b/a Customcraft Systems (Customcraft), appeals his conviction for contracting without a license. We affirm.

FACTS

In 1986 Customcraft entered into a contract with the Walkers to build and install cabinets, countertops, and vanities in their home. The contract clearly stated, "CONTRACT LABOR NOTE: ANY LABOR PERFORMED UNDER THIS CONTRACT REQUIRING A LICENSED CONTRACTOR SHALL BE PERFORMED BY HOME SERVICE CENTER LICENSE # 22876 WITH SAM S. JENKINS AS QUALIFYING PARTY." Customcraft is identified on the contract as a division of Albuquerque Financial Services, Inc.[1]

After delays and other problems developed with the work to be performed, the Walkers contacted the Construction Industries Division and were informed that Customcraft had no contractor's license. The state then filed a criminal complaint against Sam S. Jenkins, d/b/a Customcraft Systems, in metropolitan court. Defendant was convicted of contracting without a license, contrary to NMSA 1978, Section 60–13–52(A)(1) (Repl.Pamp.1984), sentenced to ninety days unsupervised probation, and ordered to pay $1,287.50 restitution to the Walkers. Defendant appealed to the district court, which affirmed the judgment

---

1. The state filed the criminal complaint against defendant individually. A corporate officer may be criminally liable through corporate act, when such act was performed by individual officer. *See Hartson v. People*, 125 Colo. 1, 240 P.2d 907 (1951); 19 C.J.S. *Corporations* § 931 (1940).

and sentence of the metropolitan court after trial de novo. Defendant appeals this conviction.

He raises three issues on appeal: (1) whether the verdict was supported by substantial evidence; (2) whether the state was collaterally estopped from bringing this charge because defendant was previously acquitted of contracting without a license on another occasion; and (3) whether the court-ordered restitution was improper because the state prevented completion of the remodeling job. We do not address defendant's third issue because he did not raise it below. Therefore, the issue was not preserved for review. *See* SCRA 1986, 12–216.

### 1. *Whether Substantial Evidence Supports the Conviction*

Defendant argues his conviction is not supported by substantial evidence. In reviewing such a claim, this court looks to whether substantial evidence of a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to the conviction. *State v. Brown,* 100 N.M. 726, 728, 676 P.2d 253, 255 (1984). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in the light most favorable to the verdict. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). An appellate court will not disturb a verdict that is supported by substantial evidence. *State v. Armstrong,* 82 N.M. 358, 482 P.2d 61 (1971). Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion. *State v. Manlove,* 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). For the reasons that follow, we hold the conviction is supported by substantial evidence.

### (a) *Was Defendant Engaged in Contracting?*

■ Section 60–13–52(A) provides:

Any person who acts in the capacity as a contractor * * * without a license required by [the Construction Industries Licensing Act (the Act)], and any person who holds himself out as a sales representative of a contractor which contractor is without a license as required by that act, is guilty of a misdemeanor * * * *

"Contractor" is defined as "any person who undertakes, offers to undertake or purports to have the capacity to undertake, by himself or through others, contracting." NMSA 1978, § 60–13–3(A) (Cum.Supp. 1986).

There is no dispute in the present case that the work to be performed included work for which a contractor's license was required. Nor is there any dispute that defendant was the qualifying party for Home Service Center (Home Service), which was properly licensed. A qualifying party who is issued a certificate of qualification is an individual who submits to be examined and who is responsible for the licensee's compliance with the Act. NMSA 1978, § 60–13–2(E), (F) (Repl.Pamp.1984). To obtain a contractor's license, a person must not only prove he is or has employed a qualifying party, but must also demonstrate good reputation, financial responsibility, and other qualifications. NMSA 1978, § 60–13–14 (Cum.Supp.1986). In the present case, there is no evidence that Customcraft had a contractor's license. In fact, the evidence is clear that Customcraft did not have a valid contractor's license.

Defendant contends there was insufficient evidence to support his conviction. He argues Customcraft merely furnished materials and products and was engaged in the business of selling prefabricated structures. The definition of "contractor" specifically excludes "any person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them in the performance of, the work of a contractor." § 60–13–3(C)(1). In making his argument, defendant relies on the language in the contract stating Home Service would perform any work requiring a contractor's license.

However, the contract was written on a form with Customcraft's name and address at the top. The contract also stated Customcraft proposed to sell "products, mate-

rial and/or labor and services as per the following terms and conditions" and was signed by "Sam Jenkins, Customcraft Systems of N.M., Division of a New Mexico Corp." The terms and conditions listed were to build and install various items in the Walkers' home.

The contract was an undertaking for the entire project, for which Customcraft remained responsible, even though Home Service was to perform the labor. Therefore, Customcraft undertook to contract. Since, under the statute, any person who undertakes contracting is a contractor, Section 60–13–3, we cannot say as a matter of law that the trial court erred in determining Customcraft had acted as a contractor. *Cf. Verchinski v. Klein,* 105 N.M. 336, 732 P.2d 863 (1987) (plaintiff signed contract to supply materials; separate contract for installation was signed by licensed contractors and plaintiff had no contractual responsibility or control over installation); *Crumpacker v. Adams,* 77 N.M. 633, 426 P.2d 781 (1967) (plaintiff was not required to have a contractor's license where work performed was furnishing materials that were neither fabricated into nor consumed in the performance of the work).

### (b) *Did Home Service's License Satisfy the License Requirement?*

█ Defendant also contends that, if Customcraft did act as a contractor, his actions are not prohibited since he signed for both Customcraft, the selling entity, and Home Service, a licensed contractor. *See* § 60–13–2(D). The Act defines "person" as "an individual, firm, partnership, corporation, association or other organization, or any combination thereof." *Id.* Based on this definition, defendant argues the contract had a properly licensed entity and qualifying party. Although this may be true, it does not provide a way to skirt the Act's licensing requirements.

The Act provides that any person who "undertakes * * * by himself or through others, contracting," is a "contractor."

§ 60–13–3(A). The language of the contract is clear that Customcraft undertook, by itself or through others, contracting. Therefore, Customcraft was a "contractor" as defined in that section, even though Home Service was to perform the actual labor. In effect, Home Service was the subcontractor; Customcraft was the general contractor. Under NMSA 1978, Section 60–13–12(B) (Repl.Pamp.1984), both must be licensed unless excepted by the statute.[2] No exception applies in this case. Therefore, under Section 60–13–12(A), Customcraft was required to be licensed.

In a similar case, the New Mexico Supreme Court determined that a partnership was required to be licensed under the Act even where one of the partners individually held a valid contractor's license. *See Nickels v. Walker,* 74 N.M. 545, 395 P.2d 679 (1964). Such a result is consistent with the primary purpose of the Act, which is "to protect the public from incompetent and irresponsible builders." *Verchinski v. Klein,* 105 N.M. at 337, 732 P.2d at 864. *See also* NMSA 1978, § 60–13–4 (Repl. Pamp.1984). Thus, it is the entity that enters into the contract that must have a license.

We therefore determine that Customcraft was required to have its own license under the Act. *See Nickels v. Walker.* In reaching this determination, we note the Act requires both a contractor and subcontractor to be licensed and prohibits transferring a license or certificate of qualification to another. NMSA 1978, §§ 60–13–3(B), 60–13–12(A) (Repl.Pamp.1984 & Cum. Supp.1986), 60–13–16(D), 60–13–18(A) (Cum.Supp.1986).

### 2. *Collateral Estoppel*

█ Defendant argues that the state is estopped from prosecuting this case because of a prior decision determining Home Service was properly licensed. In the context of criminal cases, collateral estoppel means that once an issue of ultimate fact has been determined in favor of a defen-

---

**2.** Although this section refers to bids, "bid" means "a written or oral offer to contract." § 60–13–2(K). Customcraft's conduct here was an "offer to contract," so Section 60–13–12(B) applies.

dant by a valid, final judgment, that issue cannot be relitigated between the same parties in the future. *State v. Tijerina,* 86 N.M. 31, 519 P.2d 127 (1973).

In 1985 the state brought charges against Jenkins d/b/a S & M Enterprises and Kitchen Re-nu for contracting without a license. The trial court found that Kitchen Re-nu and Home Service were the same entity, and defendant was acquitted.

The case before us does not involve the same enterprises, or the same issue of ultimate fact. Defendant does not point to any evidence in this case indicating that Customcraft and Home Service are the same entity. Therefore, although the trial court in the previous case determined that Jenkins doing business as those entities was licensed, it did not determine whether Customcraft is, or needs to be, licensed. Although the prior litigation also involved the state and defendant, it did not concern Customcraft. Therefore, collateral estoppel does not preclude the state from prosecuting defendant in this case. *Cf. State v. Orosco,* 99 N.M. 180, 655 P.2d 1024 (Ct. App.1982) (where defendant was acquitted in magistrate court of a misdemeanor, state was collaterally estopped from charging defendant in district court with a felony arising from same event where the evidence used would be the same and where defendant's defense would be the same as the defense successfully asserted in magistrate court).

CONCLUSION

We affirm the judgment and sentence of the district court.

IT IS SO ORDERED.

HARTZ, J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

I respectfully disagree with the majority's determination that defendant's conviction was supported by substantial evidence. Because of my conclusion that there was a failure of proof by the state that defendant violated the subject statute, I dissent.

The trial court concluded that, although defendant held a valid license as qualifying party for another company, such license did not operate to permit defendant to contract under a different name, even though the contract specifically provided that the licensed company would do the work for which a license was required. I disagree with the trial court's conclusion. Because of my proposed disposition, it is not necessary to address the other issues raised by defendant.

In reviewing a judgment of conviction, this court must view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences to support the verdict. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). However, under the applicable law, we must consider all the evidence and determine whether any rational trier of fact could have found the state met its burden of proving each of the elements of the crime beyond a reasonable doubt. *See State v. Sheets,* 96 N.M. 75, 628 P.2d 320 (Ct.App.1981), quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also State v. Brown,* 100 N.M. 726, 676 P.2d 253 (1984). Under the facts of this case, I do not believe the state met its burden; there was a failure of proof. In this connection, defendant was not required to prove anything whatsoever. Instead, it was incumbent upon the state, under its burden, to prove that defendant was *not* authorized to obligate Home Service Center under the subject contract. This element could not be left to speculation; nor was it defendant's burden to come forward with evidence proving that Home Service Center was indeed liable under the contract.

The Construction Industries Licensing Act, NMSA 1978, Sections 60–13–1 to 60–13–58 (Repl.Pamp.1984), requires a person engaged in the business of contractor to be licensed. *See* § 60–13–12(A). It defines a contractor as "any person who undertakes, offers to undertake, or purports to have the capacity to undertake, by himself or through others, contracting." § 60–13–3(A). The Act defines "person" to include "an individual, firm, partnership,

corporation, association or other organization, or any combination thereof." § 60–13–2(D). I interpret "person" in Section 60–13–2(D) to include an individual doing business under different names.

The state asserts that "[a] contractor is one who offers to undertake 'by himself *or through others*' to perform various construction work. Section 60–13–3(A) * * * * (emphasis added)." It then argues that Customcraft (as "contractor") contracted to do remodeling through another, Home Service Center, and that Customcraft is consequently a contractor and must therefore be licensed. In proposing this result, the state does not contest the fact that Home Service Center is properly licensed through defendant, as qualifying agent. However, it argues further that the Act requires both the principal contractor and the subcontractor to be licensed, *see* § 60–13–12(B); that the Act's purpose is effected by requiring Customcraft to be separately licensed, since the Walkers could only institute a civil action against Customcraft for any breach of the contract, *see* § 60–13–4 and *Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965), *overruled on other grounds, Lakeview Investments, Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096 (1974); and that the Act precludes the transfer of a license to another by permitting revocation of the transferred license as punishment, *see* §§ 60–13–18(A) and 60–13–23(K).

The purpose of the Act is to protect the public against incompetent construction and fiscal irresponsibility of contractors. § 60–13–4; *Verchinski v. Klein,* 105 N.M. 336, 732 P.2d 863 (1987). To this end, the Act requires licensing upon successful completion of an examination and proof of financial responsibility by the filing of a bond or a collateral assignment. *Id.;* §§ 60–13–16 and 60–13–48 to 60–13–49. This court must ascertain and give effect to the legislature's intention; legislative intent is to be determined from the language used in the statute as a whole, and when the words used are free from ambiguity and doubt, no other means of interpretation should be resorted to. *State v. Sinyard,* 100 N.M. 694, 675 P.2d 426 (Ct.App.1983).

Section 60–13–2(D) states that, as used in the Construction Industries Licensing Act, " 'person' includes an individual, firm, partnership, corporation, association or other organization, or any combination thereof." The state's interpretation of "contractor" in Section 60–13–3(A) avoids the effect of Section 60–13–2(D) on the meaning of contractor. I read "contractor" to incorporate the definition of "person" in Section 60–13–2(D). *See State v. Sinyard.* A statute is to be read to give effect to all of its provisions. *White v. Sutherland,* 92 N.M. 187, 585 P.2d 331 (Ct.App.1978). I conclude that "contractor," as used in the Act, includes an individual doing business as different entities.

For this reason, I believe the purpose of the Act was not thwarted under the facts of this case, where defendant, doing business under two different names, was licensed under at least one of the names and this fact was disclosed to the Walkers. In these circumstances, the license, although in the name of only Home Service Center, was applicable to Customcraft Systems, as long as the work undertaken pursuant to the subject contract was included under the licensed classification. *See* § 60–13–12. To interpret the Act otherwise, as the majority has apparently done, is to involve oneself in "splitting hairs," an action I prefer to avoid.

The state has not contended that defendant's contractor's license was inappropriate for the type of work undertaken for the Walkers. Nor did an improper transfer of a license occur under the circumstances here, as the state would have us believe. Additionally, because I consider Customcraft Systems and Home Service Center simply as other names under which defendant was doing business, the separate licensing of contractors and subcontractors requirement argued by the state is irrelevant.

It is undisputed that Home Service Center was a duly licensed contractor, with defendant Sam S. Jenkins as the qualifying party. This was plainly disclosed in the

contract. Thus, defendant complied with the intent and purposes of the Construction Industries Licensing Act. There was no evidence that defendant sought to insulate himself from the liabilities the Act was designed to impose on him. I would thus conclude that the "evil" the statute was intended to protect against did not encompass the specific facts and circumstances under which defendant and the Walkers entered into the subject contract. I fully realize that defendant's unorthodox procedure and his motives for doing things the way he chose to may be suspect. But his questionable activities did not, in my view, rise to the level of a statutory violation.

I would thus hold, as a matter of law, that the state failed in its burden of proving beyond a reasonable doubt that defendant contracted without a license. Defendant's conviction and the trial court's restitution order should be reversed and the cause remanded for dismissal of the charge.