2002-NMCA-035

43 P.3d 375

**EASTLAND FINANCIAL SERVICES, d/b/a Vip Plus, Ltd., Plaintiff–Appellee,**

v.

**Bennie MENDOZA, d/b/a MC Builders, Defendant,**

**and**

**Mid–Continent Casualty Company, Defendant–Appellant.**

**No. 21,125.**

Court of Appeals of New Mexico.

Jan. 25, 2002.

Nancy S. Cusack Hinkle, Hensley, Shanor & Martin, LLP, Roswell, NM, for Appellee.

Ann Maloney Conway, Edward C. Bagley, Huffaker & Conway, P.C., Albuquerque, NM, for Appellant Mid–Continent Casualty Company.

## OPINION

BUSTAMANTE, Judge.

{1} Mid–Continent Casualty Company (Mid–Continent) appeals the trial court's denial of its motion for summary judgment and the granting of summary judgment in favor of Eastland Financial Services (Eastland). Mid–Continent, as surety for MC Builders, a general contractor, was held liable for MC Builders' breach of contract and was summarily ordered to reimburse Eastland from a payment bond issued pursuant to NMSA 1978, § 13–4–18 (1987). Mid–Continent alleges that Eastland was not entitled to recover under the bond because (1) Eastland was not licensed under New Mexico's Employee Leasing Act and thus its contract to lease employees to MC Builders was illegal; (2) Eastland did not provide labor to MC Builders under the contract, but only financed the labor on the project; and (3) if Eastland did supply the labor for the project, it did so as a contractor and was required to be licensed under New Mexico's Construction Industries Licensing Act. Finally, Mid–Continent asserts that the trial court improperly denied it the right to a trial on the merits by making an incorrect finding of fact or alternatively a finding of disputed fact when granting Eastland's motion for summary judgment. We affirm.

### FACTS

{2} On March 14, 1995, MC Builders contracted with the City of Gallup Housing Authority. MC Builders agreed to furnish all labor, materials, and equipment necessary for the renovation of various units of Gallup's public housing. Because the project was performed on property of the City of Gallup, MC Builders was required to provide a payment bond under the New Mexico Public Works Act (Little Miller Act). NMSA 1978, §§ 13–4–18 to –20 (1923, as amended through 1987). MC Builders formally delivered, to the Clerk of Court of the Eleventh Judicial District, its statutory "Labor and Material Payment Bond" naming Mid–Continent as its surety. This bond insured protection of suppliers of labor and materials under any subcontract for the project. See § 13–4–18.

{3} Thereafter, MC Builders subcontracted with Eastland, an employee leasing contractor, for services on the Gallup project. Eastland hired the laborers and paid them weekly. Eastland then billed MC Builders in accordance with the terms of their contract. After receiving and paying the first few bills, MC Builders issued Eastland a check for $40,000, which was returned for lack of sufficient funds. The City of Gallup ultimately terminated MC Builders' contract for the project and Eastland was left with unpaid invoices in the amount of $79,115.75.

{4} Eastland demanded payment from MC Builders, which refused to pay. Eastland then filed a claim under the payment bond issued by Mid–Continent for the amount it alleged MC Builders owed. Mid–Continent denied the claim. Eastland filed suit on June 21, 1996. After substantial discovery, Mid–Continent filed a motion for summary judgment, which the court denied. Eastland moved for summary judgment, which the court granted. The district court allowed Eastland to collect on the bond for the amount of the outstanding invoices, plus interest, attorney's fees, and costs. Mid–Continent appeals that order.

## DISCUSSION

{5} Summary judgment may be properly granted when there are no genuine issues of material fact. *Cuevas v. State Farm Mut. Auto. Ins. Co.*, 2001–NMCA–038, ¶ 6, 130 N.M. 539, 28 P.3d 527. We review the application of the law to the undisputed facts de novo. *Id.*

### Eastland's contract with MC Builders was not illegal.

{6} Mid–Continent contends that Eastland's contract with MC Builders was illegal because at the time it engaged in business with MC Builders, it was not registered with the Regulation and Licensing Department as an employee leasing contractor and was in violation of the New Mexico Employee Leasing Act (ELA). *See* NMSA 1978, § 60–13A–3 (1993). Thus, Mid–Continent argues that Eastland is precluded from bringing an action for recovery under the bond.

{7} The ELA provides that "[n]o person shall do business in the state as an employee leasing contractor unless the person is registered with the [regulation and licensing] department." *Id.* The ELA provides both civil and criminal penalties for violation of this provision. *See* NMSA 1978, §§ 60–13A–12 and 60–13A–13 (1993). The ELA also requires an employee leasing contractor to post a surety bond with the department in the amount of $100,000. NMSA 1978, § 60–13A–7(A) (1995). Eastland concedes that it was not registered at the time it contracted with MC Builders, nor had it posted a surety bond.

{8} Generally, a contract made in violation of a statute prescribing penalties is void. *See Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 415, 827 P.2d 118, 130 (1992); *Farrar v. Hood*, 56 N.M. 724, 729, 249 P.2d 759, 762 (1952). This rule recognizes that "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice as between the parties." *Southfield v. Barrett*, 13 Cal.App.3d 290, 91 Cal. Rptr. 514, 516 (Ct.App.1970). "However, the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances. A wide range of exceptions has been recognized." *Id.; accord Farrar*, 56 N.M. at 728, 249 P.2d at 762. Our Supreme Court has held that "[v]iolation of a statute will not render a contract void if the legislature does not intend that result." *Jackson Nat'l Life Ins. Co.*, 113 N.M. at 416, 827 P.2d at 131.

{9} To determine whether the legislature intended for employee leasing contracts under the circumstances of this case to be void, we look to the plain language of the ELA. *See Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000–NMSC–030, ¶ 27, 129 N.M. 677, 12 P.3d 431 ("The plain language of a statute is the primary indicator of legislative intent.") (Internal quotation marks and citation omitted). We note that other acts, such as the Construction Industries Licensing Act (CILA), contain a provision expressly prohibiting enforcement of contracts entered into in violation of the statute. *See* NMSA 1978, § 60–13–30(A) (1977) ("No contractor shall . . . bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act . . . without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose."); *see also* NMSA 1978, § 53–17–20(A) (1969) (prohibiting a foreign corporation that is transacting business in New Mexico without a certificate of authority from maintaining "any action, suit or proceeding in any court of this state, until

the corporation has obtained a certificate of authority").

{10} The ELA, however, does not include such a provision. Therefore, we consider applicable exceptions to the general rule that illegal contracts are unenforceable. *See Asdourian v. Araj*, 38 Cal.3d 276, 211 Cal.Rptr. 703, 696 P.2d 95, 105 (1985) (In Bank) [sic] (holding that absent an express statutory provision stating that all contracts made in violation of the statute are void, exceptions to the general rule that illegal contracts are unenforceable may be applied). The California Supreme Court's opinion in *Asdourian*, approving an exception to the general rule where a defendant would be unjustly enriched at the expense of a plaintiff if the contract was not enforced, is persuasive. *Id.* The court stated that "[i]n compelling cases, illegal contracts will be enforced in order to 'avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.'" *Id.* (citation omitted).

■ {11} In determining the enforceability of a contract and the remedy available under it, we look to the policy of the transgressed law, the type of illegality involved in the contract, and the particular facts of the case. *Id.; see also N.M. Physicians Mut. Liab. Co. v. LaMure*, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993) ("In evaluating whether an exclusionary provision [of an insurance contract] conflicts with a particular statute and is therefore void, our inquiry focuses on the legislative intent behind the statute."); *Farrar*, 56 N.M. at 729, 249 P.2d at 762 ("The language of the statute, its subject matter and the purpose to be accomplished in its enactment, are matters of consideration in determining whether a contract is void or voidable.").

{12} Because the plain language of the ELA does not prohibit enforcement of the contract, we look to the policy of the ELA for guidance. The ELA was enacted for the protection of the leased employees, not for contractors that hire the leased employees. Allowing Eastland to recover from Mid–Continent does not defeat the purpose of the ELA. "In this context, the misdemeanor penalties provided in the statute should be sufficient. It will not defeat the statutory policy to allow plaintiff to recover for the reasonable value of the work performed." *Asdourian*, 211 Cal.Rptr. 703, 696 P.2d at 106.

■ {13} We hold that the contract here, although made in violation of the ELA, did not involve the type of illegality that automatically renders a contract void. Although Eastland violated a statute by entering into the contract with MC Builders, the contract was not immoral in character, inherently inequitable, or made for an illegal purpose. Therefore, the factual context and the public policy involved do not favor voiding the contract. *Id.; Measday v. Sweazea*, 78 N.M. 781, 783–84, 438 P.2d 525, 527–28 (Ct.App. 1968).

{14} Finally, MC Builders was a professional subcontractor and Mid–Continent was its surety. Eastland provided more than $79,000 of labor, according to the provisions of the contract, to the benefit of MC Builders, for which it was not compensated. Eastland employees contracted to MC Builders were paid in full. If MC Builders and Mid–Continent are allowed to retain the value of the benefits bestowed by Eastland without compensation, they will be unjustly enriched. The legislature could not have intended such a result when it enacted the registration and bonding requirements of the ELA.

### Eastland provided labor to MC Builders.

{15} Mid–Continent next argues that Eastland was a financier of the project, did not furnish labor under the contract, and was therefore not entitled to recover under the bond. The Little Miller Act obligates Mid–Continent to honor bond claims only from those who establish that they furnished labor or materials used in the work.

A. Every person, firm or corporation who has furnished labor or material in the prosecution of work provided for in such contract, in respect of which a payment bond is furnished under Section 13–4–18 NMSA 1978, and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done ... shall have the right to sue on such pay-

ment bond for the amount of the balance thereof unpaid....

Section 13–4–19(A). Mid–Continent asserts that its bond obligation was specifically limited to "those parties" " 'having' a direct contract with the Principal or his subcontractor for labor, material, or both, used directly in the performance of the contract."

{16} Mid–Continent cites to *Volt v. Western Cas.,* No. 87–090 M Civil (D.N.M. filed Nov. 23, 1987), an unpublished federal district court decision, which holds that an employee lessor does not furnish labor within the meaning of 40 U.S.C. § 270(a) and is not entitled to the protection of the Miller Act. Although unpublished federal case law may be instructive, it is not binding on this Court. *Incorporated County of Los Alamos v. Montoya,* 108 N.M. 361, 364, 772 P.2d 891, 894 (Ct.App.1989). An unpublished opinion is written solely for the benefit of the parties to the action and has no controlling precedential value. *State v. Gonzales,* 110 N.M. 218, 227, 794 P.2d 361, 370 (Ct.App.1990). Mid–Continent does not cite to any other authority for its argument that Eastland, as an employee leasing contractor, did not supply labor. Accordingly, we do not find this argument persuasive. Furthermore, *Volt* is distinguishable in that the facts there do not specify the employer/employee relationship between the temporary services company, the subcontractor, and the laborers. Therefore, we simply do not know whether the employment relationships were similar or different from those set forth in the facts of the case before us.

{17} An employer whose employee laborers contribute to a work of improvement is a furnisher of the employees' labor. *See Contractors Labor Pool, Inc. v. Westway Contractors, Inc.,* 53 Cal.App.4th 152, 61 Cal. Rptr.2d 715, 721–22 (1997). In New Mexico, employer/employee relationships have been defined by (1) the right of control over an employee's work, (2) the right to terminate the employment relationship at will without liability, and (3) the method of payment, whether by time or by the job. *Harger v. Structural Servs., Inc.,* 121 N.M. 657, 667, 916 P.2d 1324, 1334 (1996). However, these factors are not exclusive and there is no absolute test as to what constitutes an em-

ployment relationship. *Id.* Other factors may be important, such as "whether the parties believe they have created the relationship of employer and employee, insofar as this belief indicates an assumption of control by one and submission to control by the other." *Id.* (quoting Restatement (Second) of Agency, § 220 cmts. h-m) (1957). We consider all relevant circumstances when determining whether an employer/employee relationship exists. *Benavidez v. Sierra Blanca Motors,* 1996–NMSC–045, 122 N.M. 209, 215, 922 P.2d 1205, 1211. No one single factor is decisive. *Id.*

{18} For purposes of determining whether Eastland furnished labor,

[t]he designation of a person as the "employer" of another is not a mere label.... Rather, such designation signifies a legal relationship in which the employer has legal responsibilities to the employee and to third parties, which are absent where a person merely supervises another's employees or disburses to such employees wages which are due from the other person to the employees.

*Contractors Labor Pool, Inc.,* 61 Cal.Rptr.2d at 722 (emphasis omitted). The undisputed facts in the record show that Eastland had in fact taken on the responsibilities of an employer toward the employees it provided to MC Builders.

{19} Eastland was responsible for paying the workers. MC Builders issued checks to Eastland for its employment services and Eastland would, in turn, pay the workers with its own checks. When MC Builders breached the contract and refused to pay Eastland, Eastland still paid the workers. In addition, Eastland provided other benefits and services to its workers. Radford Venable, an account executive for Eastland, stated in an affidavit that it fulfilled the following employer duties: calculating the employees' weekly pay, withholding all taxes and paying all unemployment insurance taxes, making social security deductions and paying all employer contributions, maintaining all payroll and employee files including I–9s and W–4s, guaranteeing workers' compensation coverage, and providing general liability insurance

and state disability insurance. Such evidence is indicative of Eastland's employer status. *See Contractors Labor Pool, Inc.*, 61 Cal.Rptr.2d at 718–19, 721–22 (holding that the plaintiff was the employer of laborers which it furnished to work on a construction project because it took upon itself the responsibilities of an employer, including paying the workers, paying the payroll taxes, workers' compensation and other insurance premiums, and paying federal and state withholding and benefits, and was thus entitled to recover on a payment bond).

{20} Another factor bearing upon Eastland's status as an employer was Eastland's efforts to establish an understanding between itself, MC Builders, and the laborers that Eastland was the employer of the laborers. Eastland considered MC Builders a client to which it would lease its own employees. Eastland provided MC Builders with a copy of its "Guarantee to Customers" which states: "For all purposes, we are the employer of our temporary workers." Eastland's employees were provided with employee information sheets, which explained that they were Eastland employees and that any questions or problems should be discussed with Eastland's management and not with the client. The information sheet further provided that if the employee is injured on the job, the employee is to notify the healthcare provider that the employee is an Eastland temporary employee.

{21} Finally, Eastland had the sole right to terminate the workers' employment. MC Builders did not have the right to hire and fire the laborers provided by Eastland. If MC Builders became dissatisfied with one of Eastland's employees, MC Builders was required to return the employee to Eastland, who would then attempt to place the person in another assignment.

{22} Mid–Continent does not dispute any of this evidence. Instead, it contends that MC Builders contracted with Eastland only because it could not advance payment to laborers every week and it needed Eastland to advance payroll, insurance premiums, and other employee costs. However, MC Builders' motivation for entering into the contract does not affect Eastland's status as the employer of the laborers it leased. Eastland was thus a furnisher of labor with the right to recover under the bond.

**Eastland was not a contractor and was not required to be licensed by New Mexico's Construction Industries Division.**

{23} Mid–Continent argues that if Eastland was a contractor providing labor for a construction project, it was required to be licensed under the terms of the CILA. It argues that Eastland, through its employee construction workers, engaged in and supervised the construction of the Gallup project. According to Mid–Continent, because Eastland did not obtain the required contractor's license, it cannot claim compensation under the bond.

{24} The CILA provides that no person shall act as a contractor without a license. NMSA 1978, § 60–13–12 (1989). Under the CILA, if a contractor is not licensed, it may not bring suit or file a mechanic's lien for amounts unpaid. Section 60–13–30(B). The CILA defines a contractor as "any person who undertakes, offers to undertake by bid or other means or purports to have the capacity to undertake, by himself or through others, contracting. Contracting includes, constructing, altering, repairing, installing, or demolishing any ... building, stadium or other structure." NMSA 1978, § 60–13–3(A)(2) (1999). "[A]ny person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them in the performance of, the work of a contractor[,]" is not a contractor. Section 60–13–3(D)(1).

{25} The purpose of the CILA is to protect the public from irresponsible builders. *Verchinski v. Klein*, 105 N.M. 336, 337, 732 P.2d 863, 864 (1987). In *Verchinski*, we upheld the trial court's decision that the plaintiff was only a supplier of materials and was not a contractor for the purposes of the CILA. "The ordering and delivering of materials or the mere arranging for their installation does not bring suppliers of materials into the realm of the definition of 'contractor' under Section 60–13–3(A) where they are not, and their contracts do not place them, in

control of the installation." *Verchinski*, 105 N.M. at 339, 732 P.2d at 866. We note that the plaintiff in *Verchinski* supplied materials, whereas here, Eastland supplied labor. Admittedly, a furnisher of materials is expressly excluded from the definition of a contractor under Section 60–13–3(D), while a furnisher of labor is not. However, for the purposes of the CILA, it appears that where a furnisher of labor does not supervise the construction work performed by its employees, it also does not fall into the realm of the definition of contractor for the purposes of Section 60–13–3(A).

{26} We hold that because the on-site supervision and control of the workers furnished by Eastland was the responsibility of MC Builders, Eastland did not act in the capacity of a contractor for the purposes of New Mexico's Contractor Licensing Act. *Contractors Labor Pool, Inc.*, 61 Cal.Rptr.2d at 724. The California Court of Appeals in *Contractors Labor Pool, Inc.* held that a mere furnisher of labor is not a contractor for purposes of California's contractor licensing act. It reasoned:

> The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. The licensing requirements provide minimal assurance that all persons offering such services have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. To effect this purpose, the law need apply only to those who actually perform or supervise the performance of construction services; it need not apply to those who only supply materials to be used by others or laborers who will be supervised by others.

*Id.* (citations omitted). We agree with this rationale.

**The trial court did not make an inappropriate factual determination.**

{27} Mid–Continent contends that the trial court incorrectly found that East-

land did not retain authority to supervise its employees. Specifically, it claims that this finding is incompatible with the undisputed fact that the workers were Eastland's employees, and with established New Mexico law that an employer by definition retains authority over its employees.

{28} The trial court's letter order stated, "[Eastland] supplied temporary labor to the project and retained no authority to supervise or guide the work of the temporary workers. *See Verchinski v. Klein*, 105 N.M. 336, 732 P.2d 863 (1987). Therefore, [Eastland] was not a contractor, and the [CILA] does not require it to be a licensed contractor." We find no evidence, nor does Mid–Continent point to any evidence in the record, disputing the fact that MC Builders had full supervisory authority over the workers on-site. In fact, Mid–Continent's own evidence supports the trial court's finding. Bennie Mendoza, part owner of MC Builders, testified in an affidavit that, "[t]o the best of [his] knowledge, VIP Plus, Ltd. [Eastland] ... never supervised them ... and had nothing whatsoever to do with the [p]roject...." While Eastland, as their employer, did retain some authority over the workers, it did not supervise their work on the project. There is no issue of fact surrounding this issue.

**CONCLUSION**

{29} We affirm the trial court's granting of Eastland's Motion for Summary Judgment.

{30} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CYNTHIA A. FRY, Judge.